Gerald M. MARKER et al., Plaintiffs,

v.

John B. CONNALLY, as Secretary of the Treasury of the United States,

and

Johnny M. Walters, as Commissioner of Internal Revenue, et al., Defendants.

Civ. A. No. 2486–71.

United States District Court, District of Columbia.

Feb. 29, 1972.

John L. Kilcullen, Rex Reed, Washington, D. C., for plaintiffs.

Joseph L. Rauh, Jr., Washington, D. C., for defendant-intervenor United Auto Workers' Union.

Plato E. Papps, Washington, D. C., for defendant-intervenor International Ass'n of Machinists and Aerospace Workers.

Thomas H. Boerschinger, Washington, D. C., for the Government.

## OPINION AND ORDER

RICHEY, District Judge.

This case came before the Court for hearing on the plaintiffs' application for a three-judge court. Prior to the hearing of the plaintiffs' motion, the Court signed two orders permitting the International Association of Machinists and Aerospace Workers, AFL–CIO, and the United Auto Workers' Union to intervene as co-defendants in this action.

The plaintiffs in the case at bar challenge the constitutionality of the income tax exemptions granted and recognized for labor unions under Section 501 of the Internal Revenue Code. They allege that the labor organizations of which they are members engage in substantial political activity with which plaintiffs disagree, and that portions of the mandatory dues paid by them are used in this activity in violation of their constitutional rights. Finally, the plaintiffs allege that to the extent the labor organizations engage in political activity the tax exemption afforded to them under Section 501(c) (5) of the Internal Revenue Code acts as an indirect subsidy by the government of their political activity, which is a violation of plaintiffs' constitutional rights under the First and Fifth Amendments to the United States Constitution.

■ Title 28, Section 2282 of the United States Code provides as follows:

"An interlocutory or permanent injunction restraining the enforcement, operation or execution of any Act of Congress for repugnance to the Constitution of the United States shall not be granted by any district court or judge thereof unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title."

In Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962), the United States Supreme Court stated:

"When an application for a statutory three-judge court is addressed to a district court, the court's inquiry is appropriately limited to determining whether the constitutional question raised is substantial, whether the complaint at least formally alleges a basis for equitable relief, and whether the case presented otherwise comes within the requirements of the three-judge statute." Id. at 715, 82 S.Ct. at 1296.

More recently, the United States Court of Appeals for the District of Columbia in Bulluck v. Washington, No. 24,863, decided January. 19, 1972, restated the test for determining whether the constitutional questions presented are sub-

stantial in the context of 28 U.S.C. § 2284 (1970):

> "To conclude that the constitutional questions are not substantial, we must conclude that they are 'obviously without merit' or that 'their unsoundness so clearly [results] from previous decisions of [the Supreme Court] as to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy.' Ex parte Poresky, 290 U.S. 30, 32, 54 S.Ct. 3, 78 L.Ed. 152 (1933)." *Id.* at 6.

The Court has carefully considered the arguments of counsel for all the parties to the litigation, and it has concluded that the plaintiffs' application for a three-judge court should be denied. The Court bases its decision on its examination of previous Supreme Court decisions where substantially the same claims were raised.

In International Association of Machinists v. Street, 367 U.S. 740, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961), the United States Supreme Court had occasion to discuss political activism on the part of labor organizations and the remedies available to union members who opposed expenditures for this purpose. The Court stated:

> "Moreover, the fact that these expenditures are made for political activities is an additional reason for reluctance to impose such an injunctive remedy. Whatever may be the powers of Congress or the States to forbid unions altogether to make various types of political expenditures, as to which we express no opinion here, many of the expenditures involved in the present case are made for the purpose of disseminating information as to candidates and programs and publicizing the positions of the unions on them. As to such expenditures an injunction would work a restraint on the expression of political ideas which might be offensive to the First Amendment. For the majority also has an interest in stating its views without being si-

lenced by the dissenters. To attain the appropriate reconciliation between majority and dissenting interests in the area of political expression, we think the courts in administering the Act should select remedies which protect both interests to the maximum extent possible without undue impingement of one on the other." *Id.* at 773, 81 S.Ct. at 1802.

Regarding possible remedies for the dissenters, the Court stated:

> "One remedy would be an injunction against expenditure for political causes opposed by each complaining employee of a sum, from those moneys to be spent by the union for political purposes, which is so much of the moneys exacted from him as is the proportion of the union's total expenditures made for such political activities to the union's total budget. The union should not be in a position to make up such sum from money paid by a nondissenter, for this would shift a disproportionate share of the cost of collective bargaining to the dissenter and have the same effect of applying his money to support such political activities. A second remedy would be restitution to each individual employee of that portion of his money which the union expended, despite his notification, for the political causes to which he had advised the union he was opposed. There should be no necessity, however, for the employee to trace his money up to and including its expenditure; if the money goes into general funds and no separate accounts of receipts and expenditures of the funds of individual employees are maintained, the portion of his money the employee would be entitled to recover would be in the same proportion that the expenditures for political purposes which he had advised the union he disapproved bore to the total union budget." *Id.* at 774–775, 81 S. Ct. at 1803.

In Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employes v. Allen,

373 U.S. 113, 83 S.Ct. 1158, 10 L.Ed.2d 235 (1963), the Supreme Court reasserted the remedies available to dissenting union members with respect to political expenditures by labor organizations that had been stated by the Court in *Street*. This time the Court refined the procedures which the dissenting employee should follow in order to obtain a refund of that portion of his dues which were extracted for political purposes.

It is clear from the Supreme Court's decisions in *Street* and *Allen* that it is hesitant to place a restraint on expenditures by labor organizations for political activities. The Court in *Street, supra*, 367 U.S. at 773, 81 S.Ct. 1784 points out that such restraint on expression of political ideas might be offensive to the First Amendment to the United States Constitution. This Court believes that the plaintiffs in the case at bar are merely attempting to achieve indirectly through an injunction against the labor organizations' tax exempt status, that which they could not obtain directly in the *Street* and *Allen* cases.

 Finally, the Court finds that an analogy may be appropriately drawn between the case at bar and the recent Supreme Court decision in Walz v. Tax Commission, 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970). In *Walz* a local taxpayer sought to challenge the exemption from property tax which the City of New York afforded property of religious organizations used solely for religious worship. The Court held that the exemption was not violative of the Establishment Clause of the First Amendment. Just as in *Walz* the complainant could not contest the rights of the individual church members to practice their religion, the plaintiffs in the case at bar cannot complain of the rights of the individual union members to engage in legitimate political activity either individually or in concert. The right to associate politically is one guaranteed by the First Amendment to the Constitution. In both cases, only the passive benefits which a tax exemption affords these activities is subject to attack. Walz specifically held that such passive govern-

ment activity did not violate the rights of other taxpayers pursuant to the express constitutional prohibition on government establishment of a religion. The Court stated that "[T]here is no genuine nexus between tax exemption and establishment of religion." *Walz, supra* at 675, 90 S.Ct. at 1415. The Court concludes that in the instant case there is no genuine nexus between the tax exempt status given to labor unions by the federal government and the establishment of political activity as a result of the First Amendment guarantees of freedom of speech and association. There can be no question that the granting of a tax exempt status is a benefit conferred by the federal government on labor organizations. However, it is clear that the income of labor organizations is not the profit-oriented type of income which an income tax was designed to reach. *See* 44 Cong.Rec. 3937–38, 4145–55 (1909). The labor organization can use the benefits from its tax exempt status for many purposes, such as collective bargaining and assistance to its members during strikes. The fact that a certain benefit inures to political activities of a labor organization does not create a nexus between the tax exempt status of the organization and the political activity.

The Court does not believe that the numerous school cases cited by the plaintiffs, such as Green v. Connally, 330 F. Supp. 1150 (D.D.C.1971), aff'd per curiam sub. nom., Coit v. Green, 404 U.S. 997, 92 S.Ct. 564, 30 L.Ed.2d 550 (1971), and McGlotten v. Connally, 338 F.Supp. 448 (D.D.C.1972), which involved the tax exempt status given to certain fraternal organizations, are sufficiently analogous to require the convening of a three-judge court in the instant case. In both *Green* and *McGlotten* the nexus between the tax exemption and the violation of the plaintiffs' civil rights through discrimination on the basis of race was obvious. Unlike cases involving the First Amendment where benevolent neutrality on the part of the federal government is the standard, cases involving racial discrimi-

nation require that no benefit—direct or indirect—be given by the federal government. There is no question but that the tax exempt status granted by the federal government to schools and fraternal organizations was a direct benefit. Any discrimination on the part of the schools and fraternal organizations was thus supported by the federal government by virtue of the tax exemption. This was held to be constitutionally impermissible. In the case at bar the tax exempt status of the labor organizations is attacked because a portion of the union dues are directed toward partisan political activities. There is no constitutional prohibition against permitting labor organizations to express political ideas, but there are constitutional prohibitions against racial discrimination where federal aid is directly or indirectly involved. The *Street* and *Allen* decisions clearly indicate a desire on the part of the Supreme Court to protect political activities conducted by labor organizations.

Based on the foregoing, the Court holds that the plaintiffs' application for a three-judge court be and the same hereby is denied.