**Bernard W. McNAMARA et al.,**
**Plaintiffs,**

v.

**Robert JOHNSTON et al., Defendants,**
**UAW, Intervenor.**

**No. 71 C 654.**

United States District Court,
N. D. Illinois.

June 6, 1973.

William J. O'Brien, Chicago, Ill., for plaintiffs.

Harold A. Katz and Irving M. Friedman, of Katz & Friedman, Chicago, Ill., for defendants.

Stephen I. Schlossberg, Gen. Counsel UAW, Detroit, Mich., for defendant-intervenor.

## MEMORANDUM OPINION AND ORDER

BAUER, District Judge.

This cause comes on the defendants' motion to dismiss the complaint.

This is an action for an alleged breach of the fiduciary duty imposed on defendants under Section 501(a) of the Labor-Management Reporting and Disclosure Act of 1959 (commonly referred to as the Landrum-Griffin Act) 29 U.S.C. § 501(a).

The plaintiffs are employed as production unit workers in the Fisher Body Plant of General Motors Corporation at Willow Springs, Illinois, and are dues paying members of the International United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW"), the designated collective bargaining representative of production unit workers in the plant. The plaintiff, Bernard W. McNamara, in addition to being a dues paying member of UAW, also serves in the capacity of Recording Secretary of UAW, Local 558, a post to which he was duly elected by the membership of the Local. The plaintiffs bring this action as members of UAW for the benefit of the union and its members.

The defendant, Robert Johnston, is Regional Director of UAW, Region 4, a region which includes the State of Illinois. Robert Johnston also serves as Chairman of the UAW Illinois State Community Action Program Council ("CAP").

Defendant James Wright is Chairman of the UAW Chicago Area CAP Council.

Defendants Johnston, Wright and Peterson exercise custody and control over Illinois CAP funds, and all decisions respecting the use and expenditure of such funds.

Defendant Emil Mazey is Secretary-Treasurer of UAW International and in such capacity receives and handles union funds as hereinafter described.

Defendant Leonard Woodcock is International President of UAW and in such capacity exercises control and direction over the handling and expenditure of union funds.

The plaintiffs, in the complaint, allege, *inter alia,* the following facts:

1. Pursuant to the provisions of the UAW Constitution and the administrative instructions issued by the president of UAW International on May 19, 1969, each local union in the State of Illinois, including Local Union 558, is required to set aside a minimum of 3% of each member's monthly membership dues as a per capita payment to the UAW Illinois State CAP, and to remit such money to defendant Robert Johnston. Upon receipt of said money defendant Johnston allocates it proportionately to UAW Illinois State CAP and Chicago Area CAP.

2. The defendants Johnston, Wright and Peterson, unlawfully and wrongfully diverted a large part of said money into the political campaign coffers of candidates for public office and for various political expenditures and purposes totally unrelated to the interests and welfare of the union and its members or to the functions and purposes of the union as collective bargaining representative of plaintiffs and their fellow dues paying members of the union.[1] These actions of the de-

1. The plaintiffs allege that the wrongful and unauthorized diversion of union money and assets into political campaigns of candidates for public offices constitutes a

fendants were in violation of 29 U.S.C. § 501(a) which sets forth their statutory duty of fidelity and trust to hold such money solely for the benefit of the union and its members.[2]

3. Defendants Mazey and Woodcock instructed, controlled and directed defendants Johnston, Wright and Peterson in violation of their aforesaid statutory duty of fidelity and trust to hold such money solely for the benefit of the union and its members. Further, defendants Mazey and Woodcock, in violation of their statutory duty, have unlawfully and wrongfully diverted a substantial part of the membership dues for various political expenditures and purposes totally unrelated to the interests and welfare of the union and its members or to the functions and purposes of the union as a collective bargaining representative of plaintiffs and their fellow dues paying members of the union.[3]

4. The "unlawful and unauthorized" diversion of union money and assets into political campaigns was not only made by defendants in violation of their statutory duty of fidelity and trust, but was also done contrary to an express and explicit resolution adopted by a referendum vote of the membership of UAW Local 558 on May 6, 1969.[4] Defendants were given

---

breach of the statutory duty of fidelity and trust owed by said defendants, in one or more of the following ways:

"A. By failing to hold such money and property for the benefit of said labor organization and its members as required by Section 501(a) of the Labor-Management Reporting and Disclosure Act (29 U.S.C. § 501(a)).

B. By failing to manage, invest and expend said money and property in accordance with the constitution, by-laws and resolutions of said labor organization.

C. By ignoring said resolutions and dealing with the members of said labor organization as an adverse party, and by expending said monies and property in a manner that conflicts with the interests of the members of said labor organization.

D. By paying and expending said monies and property to and for candidates for federal office in violation of the Federal Corrupt Practices Act, 18 U.S.C. § 610."

2. More specifically, the plaintiffs allege that the defendants violated their statutory duty:

"A. By paying over and expending from an available fund of approximately $300,000 or more, large and substantial amounts, the exact amount of which is unknown to plaintiffs, in behalf of Adlai Stevenson III, a candidate for United States Senator in the national election of 1970.

B. By paying over and expending large and substantial amounts, the exact amount of which is unknown to plaintiffs, in behalf of various candidates for the United States House of Representatives running as candidates in the national election of 1970.

C. By paying over and expending large and substantial amounts, the exact amount of which is unknown to plaintiffs, in behalf of various candidates for state offices, in the State of Illinois, including the General Assembly and Illinois Constitutional Convention in the general election of 1970."

(Complaint, Count I, Paragraph 9).

3. The plaintiffs, more specifically, allege that among such organizations and groups to which defendants Mazey and Woodcock have wrongfully diverted union funds and assets are:

National Students Association (NSA)
Students for a Democractic Society (SDS)
Students Non-Violent Coordinating Committee (SNCC)
New Mobilization for Peace
Turn Toward Peace
Citizens Committee for a Nuclear Test Ban
National Committee for a Sane Nuclear Policy (SANE)
Americans for Democractic Action (ADA)
United World Federalists
Peace with Freedom, Inc.
Dubois Memorial Committee
United States Committee for the U.N.
American Association for the U.N.
Confederation Spanish Societies
United States Committee for Democracy in Greece

4. The resolution states, in relevant part:
"Resolution—The membership of UAW

formal notification of such a resolution and of the explicit objections of the members of UAW Local 558 to use of any part of their membership dues money by defendants for partisan political candidates and activites, or for ideological causes or support of organizations or groups espousing ideological causes. The defendants have ignored the objections expressed by the members of UAW Local 558 and the executive officers of UAW have failed and refused to institute a legal action in the name of the union to require defendants to render an accounting.

The plaintiffs seek an order of this Court requiring defendants to furnish an accounting and repay in damages to the Union all monies unlawfully diverted by them.[5]

The defendants, in support of their motion to dismiss the complaint, contend:

> Local 558, party to a Union Shop, deny use of all or any part of their dues money in support of any political candidate, political organization, state or federal legislation, any organization or group engaged in violence or using the threat of violence, the illegal seizure or destruction of property, engaged in social disorder, promoting racial agitation and any organization or group that preaches, promotes or identifies with Marxist or communist ideology. Furthermore, this membership does not authorize any person, organization or group to act as spokesman for UAW Local 558 or any political endorsement, legislative endorsement, social problem or movement of any kind unless or until the membership has clearly made such an endorsement by voting 68% in support by secret ballot using the dues check-off list to verify voters eligibility."
> (Complaint, Count I, Paragraph 11).

5. The plaintiffs request the following relief:
1. An order directing defendants to furnish a full and complete accounting, for a period of five years preceding the date of filing this complaint, with respect to

1. The complaint does not state a cause of action upon which relief can be granted because the alleged unlawful expenditures are expenses entirely proper under Section 501, and the UAW Constitution.

2. Plaintiffs have failed to exhaust their Union remedies prior to bringing this action.

3. Plaintiffs have failed to allege the performance of the procedural requirements contained in Section 501(b) of the Act.

4. There was no showing of good cause made prior to the filing of the instant suit.

The plaintiffs, in opposition to the instant motion, contend that the complaint states a proper cause of action according to 29 U.S.C. § 501(a) and has met the procedural requirements of 29 U.S.C. § 501(b).

It is the opinion of this Court that the plaintiffs' claims do not constitute a proper cause of action under 29 U.S.C. § 501.

> monies received by them in their capacity as officers or representatives of UAW and to furnish a full and complete accounting, for the same period, respecting all monies expended by them including all amounts expended for or in connection with partisan political activities and support of ideological causes or organizations or groups espousing ideological causes.
> 2. An order restraining and enjoining defendants in their capacities as officers or representatives of UAW from making expenditures, either directly or indirectly, for partisan political activities or for support of ideological causes or organizations or groups espousing ideological causes.
> 3. An order requiring defendants to repay as damages to UAW and its members all monies unlawfully and wrongfully diverted by them for partisan political activities and support of idelogical causes and organizations and groups espousing such causes.
> 4. An order allotting a reasonable part of the aforesaid damages to pay the counsel fees incurred in prosecuting this action and other expenses incurred by plaintiffs in connection with this action.

THE PLAINTIFFS' COMPLAINT FAILS TO SUFFICIENTLY STATE A CAUSE OF ACTION UNDER 29 U.S.C. § 501.

■■ The jurisdiction of this Court is invoked under the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 501. This legislation confers fiduciary status upon union officers who deal with the property and funds of a union. As a fiduciary under the Act, a union officer must account to his union for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the union.[6] The statute further provides that any breach of fiduciary duty shall not be relieved by a subsequent exculpatory resolution passed either by the union itself or by its governing board. Should a union or its governing board fail or refuse to sue, recover damages or secure an accounting within reasonable time any member of the union may sue in a federal court in a derivative capacity for the benefit of the union.[7]

■ The clear intent of Congress in enacting this legislation was to weed out instances of corruption and breach of trust; to preserve the rights of individual union members; and to insure high standards of responsibility on the part of, at that time, powerful and sometimes detached and autocratic union officers. Richardson v. Tyler, 309 F.Supp. 1020 (N.D.Ill.1970); Purcell v. Keane, 277 F.Supp. 252 (E.D.Pa.1967). Thus the precise issue of the instant action is whether the defendants breached their fiduciary duty in violation of 29 U.S.C. § 501.

Section 501(a) of the Act literally requires, and was intended to so require, union officers to expend union funds in accordance with the union's constitution

6. Section 501(a) of 29 U.S.C. provides:

"The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organizations as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization. A general exculpatory provision in the constitution and bylaws of such a labor organization or a general exculpatory resolution of a governing body purporting to relieve any such person of liability for breach of the duties declared by this section shall be void as against public policy."

7. Section 501(b) of 29 U.S.C. provides:

"When any officer, agent, shop steward, or representative of any labor organization is alleged to have violated the duties declared in subsection (a) of this section and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States, or in any State court of competent jurisdiction to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization. No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown, which application may be made ex parte. The trial judge may allot a reasonable part of the recovery in any action under this subsection to pay the fees of counsel prosecuting the suit at the instance of the member of the labor organization and to compensate such member for any expenses necessarily paid or incurred by him in connection with the litigation."

and bylaws and any resolution of the governing bodies adopted thereunder.[8]

▮ Congress did not in Section 501, or elsewhere in the Act, attempt to regulate or limit the purposes for which a union may spend its money, and the use of the phrase "taking into account the special problems and [that] the labor organization" indicates an awareness of the fact that the labor union of today does not typically confine its activities to "business unionism."[9] What the Act does require is that expenditures of a union's funds as well as use of its other assets, be exclusively for purposes which are authorized by its constitution, bylaws, and any pertinent resolutions of its governing body.[10] Congress did not intend § 501 to be a bar to union expenditures for political activity. Nowhere in the Act is there an attempt to limit or regulate the purposes for which a union uses its funds. The very words which are embodied in § 501 of the Statute— ". . . taking into account the special problems and functions of a labor organization . . ." indicates a recognition of the political realities of modern unionism. Senator McClellan, the principal Congressional proponent of fiduciary responsibility for union officials, stated:

"However, I am not offering my amendment on the direct question of political contributions. Everyone knows my views on the subject, I assume. This is not a drive at that situation. It is a drive at skullduggery of some leaders when they meet in executive sessions and pay off this one and pay off that one. . . . I may say that there never was any idea of my trying to curb the authority of the members of a union to do whatever the members want to do; rather it is my intention to protect the members from having the members of a board or a committee vote to do just about anything they want to do, as has been the case in many instances." 105 Cong.Rec. 6526 (Daily Ed., April 23, 1959); II Legislative History of the Labor Management Act of 1959, at 1131 (1959).[11]

---

8. A clear statement of Congressional intent on this issue was made by then Senator John F. Kennedy (D.Mass.):

"Union officers will not be guilty of breach of trust under this section when their expenditures are within the authority conferred upon them either by the constitution or by a resolution of the executive board, convention or other appropriate governing body. . . ." 105 Cong.Rec. 17900 (Daily Ed., September 3, 1959).

Thus, the legislative history reinforces the plain language of the statute that when union funds are spent in accordance with the union's constitution, bylaws and resolutions, there is no violation of the law.

9. Another statement of Congressional intent on the scope of legitimate union expenditures was again made by Senator Kennedy:

"The bill does not limit in any way the purposes for which the funds of a labor organization may be expended or the investments which can be made . . . . The problem with which labor organizations are accustomed to deal are not limited to bread and butter unionism or to organization and collective bargaining alone, but encompass a broad spectrum of social objectives as the union may determine." 105 Cong.Rec. 16415 (Daily Ed., Sept. 3, 1959).

10. See Cox, Law and National Labor Policy; Smith, The Labor-Management Reporting and Disclosure Act of 1959, 46 Va.L.Rev. 195 (1960). Professor Archibald Cox, former Solicitor General of the United States, has stated:

"Section 501 imposes no restrictions upon the purposes for which a labor organization may expend its funds. The propriety of union activities other than collective bargaining, such as charitable contributions and support for political candidates, may be fairly debatable, but there is a separate issue of too great importance for the courts to resolve by interpreting a provision which deals directly with only the duties of union agents to the organization and its members." Cox, Internal Affairs of Labor Unions Under the Labor Reform Act of 1959, 58 Mich.L.Rev. 819, at 828–9.

11. The plaintiffs have attempted to support their claim that the political contributions by the defendants are *per se* violations of § 501 by citing to remarks made by Senator McClellan. However, the above state-

**524**

■ It is clear that political expenditures of union funds which are authorized by its constitution, bylaws, and any pertinent resolution of its governing body is not within the prohibition of Section 501 of the Act.

Numerous sections of the UAW Constitution mandate the kind of expenditures which are challenged in the instant complaint.[12] Plaintiffs have failed to cite to this Court any provision of the UAW Constitution violated by defendants. The Constitution of the UAW (Art. 7, Sec. 1) establishes the convention or the supreme governing body of the International Union. The official proceedings of the convention demonstrate the approval by resolution of UAW contributions to various organizations and groups concerned with such issues as civil rights, peace, foreign affairs, civil liberties, consumer protection, legislation, education and economic policy.[13] The 1970 UAW convention thus approved the type of contributions which are challenged by the plaintiffs.

■ The fiduciary duty of union officers under § 501 is based on general agency principles. Union officers are viewed as agents for their principal, the membership. It necessarily follows that an agent cannot be in breach of duty when he is acting pursuant to the direction of his principal. To find a breach of duty when an officer disburses funds in accordance with the constitution and bylaws of his union would be contrary to the letter and spirit of § 501. It would inject judicial interventions into the policy making process of a union.[14]

■ The defendants' expenditures of union funds for contributions to political candidates and social causes was authorized by the UAW Constitution and thus cannot by itself constitute a violation of § 501 of the Act.[15]

This ruling is in keeping with the Congressional intent in enacting § 501 as described by Senator Morse:

"I have been assured that the fiduciary section will not prevent political contributions. I trust the courts will

ment of Senator McClellan clearly indicates to this Court that political expenditures made by the defendant if authorized by the Union constitution and governing laws are not within the prohibition of § 501 as intended by its sponsors.

12. See Article 2, Secs. 4, 5, and 6; Article 7, Sec. 2; and Article 23, Secs. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10 and 11 of the UAW 1970 Constitution. These provisions of the union's constitution directing union officers to expend union money in political campaigns were democratically enacted by the membership at various UAW Constitutional Conventions.

13. 1970 Proceedings, Twenty-Second Constitutional Convention, UAW, pages 18–31, 63–75, 98–130, 249–262, 272–297, 348–351, 355, 368–371, 394, and 423.

14. Obviously, such delegates' and elected union officials' determination as to which expenditures are in the best interest of the union are binding and must prevail where there is a conflict with a single local union or individual members of the union or minority dissenting delegation. It would, of course, be an unconstitutional denial of due process to permit such dissenters to act as a class and attempt to usurp the prerogatives of and to speak

for the majority. Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940).

15. Congressman O'Hara makes clear that the standard by which legality of an expenditure for purposes of § 501 is to be judged by the union's own constitution and bylaws:

"Nor is it our intention that the courts, state or federal, or any other government agency, shall second guess union officers and employees on the question of whether a particular investment or expenditure is included within the 'special problems and functions of a labor organization.' If it is made in accordance with, and for a purpose permitted by, the Constitution, bylaws or regularly adopted resolutions of the union's constitutional governing bodies, the officer or employee will not be required at his peril to determine whether or not the constitution, bylaws or resolution goes beyond the legitimate purposes and objectives of the organization. To do this would place them in an impossible position and would paralyze the legitimate operations of unions." II Leg.Hist. LMRDA, p. 1633; Cong.Rec., August 12, 1959, p. 14356.

so interpret the language in the bill." Vol. II, Leg.Hist., LMRDA, p. 1416; Cong.Rec., September 3, 1959, p. 16387.[16]

The plaintiffs have attempted to infer that the actions of the defendants were illegal (*ultra vires*) and thus a breach of the defendants' fiduciary duty by stating that the defendants' contributions were made in violation of 18 U.S.C. § 610.[17] However, the Supreme Court in Pipefitters Local Union No. 562 v. United States, 407 U.S. 385, 92 S.Ct. 2247, 33 L.Ed.2d 11 (1972) has recently stated:

"We therefore hold that § 610 does not apply to union contributions and expenditures from political funds financed in some sense by voluntary donations of employees."[18]  Id. at 409, 92 S.Ct. at 2261.

■ Further, Section 610 does not authorize a private right of action and the plaintiffs' conclusory allegations that § 610 has been violated cannot in themselves change the defendants' union authorized political expenditures into a 29 U.S.C. § 501 violation.  Ash v. Cort, 350 F.Supp. 227 (E.D.Pa.1972)[19];

16. Commentators have concurred in this congressional proclamation that the § 501 prohibition should not extend to political contributions which are authorized by a union.  Archibald Cox, Internal Affairs of Labor Unions Under the Labor Reform Act of 1959, 58 Mich.L.Rev. 819 (1960); Frank T. Dugan, Fiduciary Obligation Under the New Act, 48 Georgetown Law Journal 277 (1959); Charles R. Katz, Fiduciary Obligations of Union Officers Under Section 501 of the LMRDA of 1959, Labor Law Journal, June, 1963; Albert B. Tarbutton, Jr., The Fiduciary Responsibility of Officers of Labor Organizations Under the Common Law and LMRDA, Symposium on LMRDA, p. 516; H. Howard Ostrin, Fiduciary Obligations of Union Officers: A Critical Analysis of Section 501, Id. at p. 531; Nathan R. Berke, Comments, Id., at p. 540; Gus Tyler, Section 501 and Proper Functions of Unions, Id. at p. 544; Joseph Rauh, Jr., Comments, Id. at p. 561.

17. Section 610 of 18 U.S.C. provides:
"As used in this section, the phrase 'contribution or expenditure' shall include any direct or indirect payment, distribution, loan, advance, deposit or gift of money, or any services, or anything of value (except a loan of money by a national or State bank made in accordance with the applicable banking laws and regulations and in the ordinary course of business) to any candidate, campaign, committee, or political party or organization, in connection with any election to any of the offices referred to in this section; but shall not include communications by a corporation to its stockholders and their families or by a labor organization to its members and their families on any subject; nonpartisan registration and

get-out-the-vote campaigns by a corporation aimed at its stockholders and their families, or by a labor organization aimed at its members and their families; the establishment, administration, and solicitation of contributions to a separate segregated fund to be utilized for political purposes by a corporation or labor organization: *Provided*, That it shall be unlawful for such a fund to make a contribution or expenditure by utilizing money or anything of value secured by physical force, job discrimination, financial reprisals, or the threat of force, job discrimination, or financial reprisal; in a labor organization or as a condition of employment, or by monies obtained in any commercial transaction."
As amended Feb. 7, 1972.

18. The Court went on to cite with approval the statement of Representative Hansen who sponsored § 610 which clearly indicates that the type of union political expenditures authorized by a union's constitution and resolutions of its conventions are not intended to be violative of § 610. See Pipefitters Local Union No. 562 v. United States, 407 U.S. 385 (1972) at 431, footnote 42, 92 S.Ct. 2247, 33 L.Ed.2d 11, 117 Cong.Rec. H11478.  Congress intended that § 610 would insure against officers making political expenditures without the consent of their members and clearly does not *per se* forbid authorized union contributions as in the instant action.  United States v. Lewis Food Co., 366 F.2d 710 (9th Cir. 1966).

19. See generally, United States v. Roganovich, 318 F.2d 167 (7th Cir. 1963); Van Daele v. Vinci, 294 F.Supp. 71 (N.D. Ill.1968); Fullerton v. The Monongahela Connecting Railroad Company, 242 F. Supp. 622 (W.D.Pa.1965).

Schonfeld v. Raftery, 335 F.Supp. 846 (S.D.N.Y.1971). However, this ruling should not be interpreted as foreclosing the plaintiffs' right of redress under § 610 through the proper authorities.[20]

Since the spring of 1968 the UAW has provided a procedure by which *individual* members [21] as a matter of conscience may dissent from the political activity of the UAW and enter an objection to the expenditure a portion of their dues for political purposes.[22] In such cases the UAW refunds to the individual the proportion of union dues used for such purposes.[23] Moreover, if a union member is dissatisfied with the proportional allocation made by the Secretary-Treasurer of the union, the dissenting member may appeal therefrom to the International Executive Board, and then, at his option, either to the UAW Convention or to the UAW's unique Public Review Board.[24]

20. While redress of the plaintiffs' grievance seems doubtful under 29 U.S.C. § 501, there may be other avenues of legal redress still open to them. First, the plaintiffs could seek to have a suit for an 18 U.S.C. § 610 violation instituted by the proper authorities. Second, the plaintiffs could attempt a suit for a breach of the duty of fair representation under 29 U.S.C. §§ 157–8 claiming improper and unauthorized involvement in political causes. However, a successful suit against the defendants seems doubtful. See Reid et al. v. International Union UAW (No. 67 C 224, N.D.Okla. 1972), affd. 479 F.2d 517 (10th Cir., 1973). Cf. Seay v. McDonnell Douglas Corporation, 427 F.2d 996 (9th Cir. 1970). Third, the plaintiffs could attack the political contributions of the defendants as engaging in political activity in violation of the labor organization's tax exempt status. However, the success of such a suit is questionable. See Marker v. Connolly, 337 F.Supp. 1301 (D.D.C. 1972). Fourth, the plaintiffs could seek an accounting pursuant to 29 U.S.C. § 431(c) or request the Secretary of Labor to file suit in district court for alleged failure to disclose pursuant to 29 U.S.C. § 210. Regardless of whether the plaintiffs would succeed on the merits on any of the possible legal redress alternatives, it is clear to this Court that an action under 29 U.S.C. § 501, on which the instant action is predicated, is improper and undesirable.

21. While the union gives an individual an opportunity to opt out of political contributions, a provision in the union's constitution makes it mandatory that local unions participate in state CAP councils including the contribution of a percentage of local union dues. See Article 23, Section 4, of the UAW Constitution; and 1970 Proceedings, supra, pages 218–224.

22. Article 16, Section 7 of the UAW Constitution provides:

"(a) Any member shall have the right to object to the expenditure of a portion of his dues money for activities or causes primarily political in nature. The approximate proportion of dues spent for such political purposes shall be determined by a committee of the International Executive Board, which shall be appointed by the President, subject to the approval of said Board. The member may perfect his objection by individually notifying the International Secretary-Treasurer of his objection by registered or certified mail; provided, however, that such objection shall be timely only during the first fourteen (14) days of Union membership and during the fourteen (14) days following each anniversary of Union membership. An objection may be continued from year-to-year by individual notifications given during each annual fourteen (14) day period.

(b) If an objecting member is dissatisfied with the approximate proportional allocation made by the committee of the International Executive Board, or the disposition of his objection by the International Secretary-Treasurer, he may appeal directly to the full International Executive Board and the decision of the International Executive Board shall be appealable to the Public Review Board or the Convention Appeals Committee at the option of said member."

23. It is clear that the adoption of this provision by the union was to guarantee compliance with the dictates of two fairly recent Supreme Court cases. See International Association of Machinists v. Street, 367 U.S. 740, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961), and Railway Clerk v. Allen, 373 U.S. 113, 83 S.Ct. 1158, 10 L.Ed.2d 235 (1963).

24. The UAW Public Review Board acts independently of the UAW, and it has been widely praised. See Jerome H.

Regardless of whether the plaintiffs could have used other procedural or legal remedies to redress their instant grievance, it is clear that the instant complaint brought under 29 U.S.C. § 501 is insufficient and must be dismissed.

The plaintiffs, in their complaint, have failed to state a claim upon which relief can be granted. Section 501 of 29 U.S.C. was never intended by Congress, nor interpreted by courts, to cover political contributions which have been authorized by a union's constitution or other governing resolutions.

Further, the issue of the propriety of a union's authorized charitable and political contributions presents a sensitive controversy over which a federal district court should be reluctant to act without a clear and specific grant of jurisdiction.

Accordingly, it is hereby ordered that the defendants motion to dismiss is granted.

Brooks, Impartial Public Review of International Union Disputes: Experiment in Democratic Self-Discipline, 22 Ohio St. L.J. 64 (1961); Comment, Judicial Control of Action of Private Associations, 76 Harv.L.Rev. 983 (1963).

Some courts have even suggested that a union member who is concerned about UAW contributions should first seek the redress of the internal review procedures of the UAW including the Public Review Board as a more practical alternative to litigation in federal court. See Reid v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), Local 1093, No. 67 C 224 (N.D.Okla., Slip Opinion, June 14, 1972).