**Larry FARRINGTON and John Pruitt, as and for themselves and as members of a class having an interest in the funds of Chevrolet Local 659, Plaintiffs,**

v.

**David BENJAMIN, President of Chevrolet Local 659, a Labor Organization, Defendant.**

Civ. A. No. 76–40053.

United States District Court,
E. D. Michigan, S. D.

March 27, 1979.

Gordon Suber, Flint, Mich., for plaintiffs.

Larry G. Sharp, Flint, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

JAMES HARVEY, District Judge.

Plaintiffs commenced this action under 29 U.S.C. § 501(a), (b) alleging that defendant violated the International Constitution

of the United Automobile, Aerospace and Agricultural Implement Workers of America (hereinafter, UAW) and the By-laws of Local Union 659 by disbursing union funds without prior authorization and by failing to properly supervise other union activities. Plaintiffs allege that these actions committed by defendant as President of Local 659 constitute a breach of his fiduciary duty to the union and its members. Plaintiffs seek both legal and equitable relief as provided for in 29 U.S.C. § 501(a), (b).

The action initially challenged the propriety of five transactions relating to the appropriation and spending of union funds by defendant. On August 30, 1977, the Court ordered Count IV and Count V dismissed with prejudice pursuant to a stipulation of the parties. The propriety of the following transactions remains at issue:

Count I: The payment of $36,653.00 by Local 659 to Dupuis and Ryden, a Certified Public Accounting (hereinafter CPA) firm for services rendered in conducting the 1975 elections for Local 659.

Count II: The utilization and the payment of $26,367.70 by Local 659 to union members appointed as election assistants for the 1975 elections for Local 659.

Count III: The payment of $822.87 to the law firm of Draper, Daniel, Ruhala and Seymour, P. C. and the payment of $1,000.00 to Attorney James O. Turnage for legal services rendered to Local 659 in 1975.

On December 12, 1977, the parties submitted to the Court proposed findings of fact and proposed conclusions of law. The parties additionally informed the Court which proposed findings of fact were agreed upon and which were disputed or partially disputed between the parties.

On December 13, 1977, the Court received Exhibits # 1 through # 98 into evidence pursuant to the stipulation of counsel. The Court also heard the testimony of two witnesses relating to the payment of union funds to the CPA firm of Dupuis and Ryden.

On December 15, 1977, the Court heard the final arguments of counsel in the matter and took the action under advisement.

Upon a review of the entire record, the Court hereby sets forth its findings of fact and conclusions of law pursuant to F.R. Civ.P. 52(a).

## FINDINGS OF FACT

### A. JURISDICTION

1. Plaintiffs Larry Farrington and John Pruitt were members in good standing of UAW Local 659 at all relevant times to the instant action. Stipulated Findings of Fact # 6.

2. Defendant David Benjamin was the duly elected President of UAW Local 659 at all times relevant to the instant action. Stipulated Findings of Fact # 9.

3. UAW Local 659 is an amalgamated local labor organization affiliated with the International UAW. In 1975, Local 659 was the local union collective bargaining representative for approximately 15,900 employees of General Motors Corporation employed at seventeen automotive or parts plants in Genesee County, Michigan and was also the representative of approximately 5,000 General Motors Corporation retirees. Stipulated Findings of Fact # 10, # 11.

4. By petition to the Executive Board of Local 659, plaintiff Farrington requested that the Board take whatever steps were necessary to recover the union funds allegedly improperly expended on the 1975 elections.

5. On March 23, 1976, defendant Benjamin, on behalf of the Executive Board, refused to honor plaintiff Farrington's request or to pursue recovery of the funds expended.

6. On May 28, 1976, upon a review of plaintiffs' application to commence the instant action on behalf of Local 659 and upon finding good cause for the same, the Court granted plaintiffs leave to file their verified complaint against defendant Benjamin.

B. *OPERATIVE FACTS*

7. As President of UAW Local 659, defendant Benjamin was a member of the Executive Board of Local 659. Article VI, Section 1, UAW Local 659 By-laws, Plaintiffs' Exhibit # 2.

8. Members of the Executive Board shall comply with the UAW Local 659 By-laws and with the International UAW Constitution. Article VII, Section 1(A), UAW Local 659 By-laws, Plaintiffs' Exhibit # 2.

9. Executive Board members are authorized to pay all bills and necessary expenses of the Local Union as outlined in Article 46 of the Constitution and are authorized to disburse funds not to exceed $250.00 in any single disbursement and each disbursement must be reported at the next Joint Council meeting for approval. Article VII, Section 1(E), UAW Local 659 By-laws, Plaintiffs' Exhibit # 2.

10. The President of Local 659 shall countersign all drafts, checks, notes, orders, or other undertaking for the payment of money on the Local Union Treasury. Article IX, Section 1(H), UAW Local 659 By-laws, Plaintiffs' Exhibit # 2.

11. Local 659 has a standing Election Committee elected by and from the members of the Joint Council. It is the duty of the Election Committee to supervise all primary and final union elections of local union officers. Article XVI, Section 1 and 2, UAW Local 659 By-laws, Plaintiffs' Exhibit # 2.

12. In 1975, Willie Jamerson was the Chairman of the Election Committee.

13. On May 6 and 7, 1975, Local 659 conducted its Primary Election for local union officers. Stipulated Findings of Fact # 16.

14. On May 20 and 21, 1975, Local 659 conducted its Run-Off Election for local union officers. Stipulated Findings of Fact # 17.

15. The 1975 Union Elections were the first "in-plant" elections conducted in the history of Local 659. Stipulated Findings of Fact # 18.

16. Defendant Benjamin was re-elected President of Local 659 in 1975. Stipulated Findings of Fact # 15.

C. *COUNT I: RETENTION OF DUPUIS & RYDEN*

17. Article XX, Section 7 of the By-laws of Local 659 provide:

A firm of Certified Public Accountants within the State of Michigan shall be employed to conduct the General Local Union Election of Officers, Unit Officers, Shop Committee-at-Large, Skilled Trades Shop Committee-at-Large and International UAW Convention delegates. Any agreement hiring Certified Public Accountants shall be negotiated by the Election Committee, and shall be placed into a written contract regarding rates, maintenance of Local Union records, etc., between the Local Union and Certified Public Accounts. The Agreements shall be subject to the approval of, and be signed by, the Local Union President and Financial Secretary.

Plaintiffs' Exhibit # 2.

18. Local 659 had employed the CPA firm of Dupuis & Ryden to conduct the prior fifteen union elections, including the 1975 union elections. Stipulated Findings of Fact # 23.

19. Prior to 1975, written agreements between Local 659 and the CPA firm of Dupuis & Ryden set forth the balloting procedure, election hours and places of balloting. The agreements did not specify the rates of compensation for the CPA services and were signed by the Election Committee Chairman only. Defendant's Exhibit # 57A–N.

20. Prior to 1975, the CPA firm of Dupuis & Ryden charged Local 659 a fee based on the standard per diem hourly rate of the CPA firm personnel.

21. Chairman Jamerson of the Election Committee negotiated the agreement with the CPA firm of Dupuis & Ryden regarding the 1975 union elections.

22. The CPA firm of Dupuis & Ryden represented to Local 659 that $33,000.00 would be an estimate for its services for conducting the Primary and Run-Off Elec-

tions in 1975, but that the same was only an estimate due to inevitable and unpredictable difficulties which occur in any election. Testimony of Joseph H. Anthony, CPA, Dupuis & Ryden.

23. The written agreement between Local 659 and the CPA firm of Dupuis & Ryden was similar to written agreements from past years setting forth the balloting places, election hours and the counting and certification of the election results. The written agreement did not specify the rate of compensation. Defendant's Exhibits # 55, 56.

24. Defendant Benjamin did not sign the 1975 agreement between Local 659 and the CPA firm of Dupuis & Ryden.

25. On June 18, 1975 following the elections, the CPA firm of Dupuis & Ryden submitted a bill to Local 659 in the amount of $37,653.00 for professional services rendered for conducting the 1975 union elections. Defendant's Exhibit # 58S.

26. Local 659 paid the CPA firm of Dupuis & Ryden in regular installments from July 14, 1975 until December 15, 1975. Defendant's Exhibits # 58B, # 61.

27. Defendant Benjamin countersigned five of the six installment payments from Local 659 to the CPA firm of Dupuis & Ryden. Defendant's Exhibit # 61.

28. Expenditures to the CPA firm of Dupuis & Ryden were ratified by the Executive Board of Local 659 and by the Joint Council of Local 659 subsequent to payment; but, at no time were the expenditures approved prior to payment. Defendant's Exhibit # 97.

## D. COUNT II: UTILIZATION OF ELECTION ASSISTANTS

29. Local 659 customarily employed union members as "election assistants" to facilitate the conducting of union elections. "Election assistants" were paid on a "lost time" basis; that is, election assistants would be paid from union funds for the time spent away from their regular scheduled shift to perform union-related duties. Stipulated Findings of Fact # 31, # 39.

30. In the 1975 elections, approximately 165 election assistants were selected by the Election Committee and performed various functions, including but not limited to: setting up voting booths, delivering ballots, moving trailers, maintaining heat and light at voting locations, maintaining order and generally assisting the CPA firm and the Election Committee as requested. Stipulated Findings of Fact # 33.

31. The International UAW Constitution and the By-laws of Local 659 do not specifically provide for nor specifically prohibit the use of election assistants on a "lost-time" basis. Plaintiffs' Exhibits # 1, # 2, # 4, # 6.

32. Following the Primary election of May 6 and 7, 1975, defendant Benjamin received a mailgram from Leonard Woodcock, International UAW President, informing defendant that:

". . . the practice of bringing out of the plant on lost time basis an unwarranted number of election assistants, or observers, is improper and unnecessarily expensive for your local union . . . Please take the necessary steps to see that this practice of providing election assistants, or observers, on a lost time basis is discontinued . . ."

Plaintiffs' Exhibit # 6, dated May 17, 1975.

33. On May 21 and 22, 1975, defendant Benjamin disregarded the directive of International UAW President Woodcock and permitted the Run-Off Election to proceed with the use of the election assistants.

34. Defendant Benjamin authorized the payment of $26,367.70 in union funds to the election assistants on a "lost-time" basis and countersigned the checks for the same. The sum of $26,367.70 expended for election assistants for the 1975 elections is the total of approximately $16,000.00 expended for election assistants in the Primary Election and of approximately $10,367.70 expended for election assistants in the Run-Off Election. Defendant's Exhibit # 42.

35. Expenditures for the election assistants were approved and ratified by the Executive Board of Local 659 and by the

Joint Council of Local 659 subsequent to payment; but, at no time, were the expenditures approved prior to payment. Defendant's Exhibit # 97.

### E. COUNT III: RETENTION OF COUNSEL

36. Local 659 customarily retained local legal counsel when legal matters arose involving the local labor organization. Stipulated Findings of Fact # 45.

37. Various disputes arose as a result of Local 659's union elections of officers in 1975. Stipulated Findings of Fact # 47.

38. The Election Committee, by and through its Chairman Jamerson, requested that defendant Benjamin, as Local President, provide the Committee with legal counsel to advise it in resolving the disputes. Stipulated Findings of Fact # 48; see also, Defendant's Exhibits # 37 through # 47, # 83.

39. The law firm of Draper, Daniel, Ruhala and Seymour, P. C., was retained to assist the Election Committee in the resolution of election disputes. See, Stipulated Findings of Fact # 50; Defendant's Exhibit # 62.

40. The total fee paid to the law firm of Draper, Daniel, Ruhala and Seymour was $822.87 and said fee was paid in installments commencing June 11, 1975 and ending November 20, 1975. Defendant's Exhibit # 62.

41. All checks for payment to the law firm of Draper, Daniel, Ruhala and Seymour were from union funds and countersigned by defendant Benjamin. Defendant's Exhibit # 62.

42. Expenditures to the law firm of Draper, Daniel, Ruhala and Seymour were approved and ratified by the Executive Board of Local 659 and by the Joint Council of Local 659 subsequent to payment; but, at no time, were the expenditures approved prior to payment. Defendant's Exhibit # 97.

43. Local 659 further retained the services of Attorney James O. Turnage to protect the interests of Local 659 in light of a criminal investigation conducted by the Federal Bureau of Investigation for alleged mishandling of union funds.

44. Attorney Turnage did not represent the interests of any individual union member but rather counseled members who were interviewed by the FBI and assured the proper handling of Local 659's records. Defendant's Exhibit # 85.

45. Attorney Turnage was paid a fee of $1,000.00 from union funds by check countersigned by defendant Benjamin. Defendant's Exhibit # 60.

46. The expenditure to Attorney Turnage was approved and ratified by the Executive Board of Local 659 and by the Joint Council of Local 659 subsequent to payment; but, at no time, was the expenditure approved prior to payment. Defendant's Exhibit # 97.

## CONCLUSIONS OF LAW

### A. JURISDICTION

1. The Court has original jurisdiction over the instant action. 29 U.S.C. § 501(b); Court's Findings of Fact # 1 through # 6.

### B. SECTION 501 OF THE LABOR–MANAGEMENT REPORTING AND DISCLOSURE ACT OF 1959

2. Section 501(a) states in pertinent part: (a) The officers, . . . of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which

conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization . . .

29 U.S.C. § 501(a).

3. The purpose of § 501 is to curb the mischief wrought by the misuse of union funds and property in its every manifestation. Thus the reach of 501 extends to every area in which subversion of the interests of the union membership may be accomplished by union officials or representatives acting in culpable derogation of these interests. *Hood v. Journeymen, Barbers, Hairdressers, Cosmetologists & Proprietors Int'l Union of America*, 454 F.2d 1347, 1354 (CA7, 1972).

4. Section 501(a) confers fiduciary status on union officers who deal with property and funds of the union. *Richardson v. Tyler*, 309 F.Supp. 1020 (N.D.Ill., 1970); 29 U.S.C. § 501(a).

5. Defendant Benjamin, as President of Local 659, had a duty to secure prior approval from the Executive Board of Local 659 before authorizing disbursement of union funds in excess of $250.00 in accordance with Article VII, Section 1E of the By-laws of Local 659.

6. A failure to secure prior approval from the Executive Board of Local 659 is a breach of fiduciary duty on the part of defendant Benjamin. 29 U.S.C. § 501(a); Article VII, Section 1A, E of the By-laws of UAW Local 659.

7. Subsequent ratification by the Executive Board of Local 659 of a disbursement of union funds in excess of $250.00 does not relieve defendant Benjamin or any person of liability for breach of the duties declared in the By-laws, International UAW Constitution or § 501 of the Labor-Management Reporting and Disclosure Act. Such acts are void as against public policy. 29 U.S.C. 501(a); *McNamara v. Johnston*, 360 F.Supp. 517 (D.C.Ill., 1973); *aff'd* 522 F.2d 1157 (CA 7, 1975), *cert. den'd* 425 U.S. 911, 96 S.Ct. 1506, 47 L.Ed.2d 761.

8. A union officer who conforms his conduct to the past practice of the union is not relieved of liability for breach of duty if the past practice is itself in derogation of the constitution and by-laws of the union. Section 501 mandates that expenditures of union funds be "in accordance with the union constitution and by laws." 29 U.S.C. § 501(a).

9. Courts are reluctant to substitute their judgment for that of union officials in the interpretation of the union's constitution, and will interfere only where the official's interpretation is not fair or reasonable. *Vestal v. Hoffa*, 451 F.2d 706, 709 (CA 6, 1971), *cert. den'd* 406 U.S. 934, 92 S.Ct. 1768, 32 L.Ed.2d 135 (1972).

### C. *COUNT I: RETENTION OF DUPUIS & RYDEN*

10. Defendant Benjamin had a duty to Local 659 to approve and to sign a written contract for the services of the CPA firm of Dupuis & Ryden rendered in the 1975 union elections. Court's Findings of Fact # 7, # 8, # 17 and # 24.

11. Defendant Benjamin had a duty to Local 659 to secure prior approval from the Executive Board of Local 659 before authorizing disbursement of union funds to the CPA firm of Dupuis & Ryden in a total amount of $37,653.00. Court's Findings of Fact # 7, # 8, # 9, # 10, # 27 and # 28.

12. Defendant Benjamin breached his duty to Local 659 by failing to approve or to sign a written contract for the services of the CPA firm of Dupuis & Ryden.

13. Defendant Benjamin further breached his fiduciary duty to Local 659 by failing to secure prior approval from the Executive Board of Local 659 before authorizing disbursement of union funds to the CPA firm of Dupuis & Ryden.

14. The breach of duties by defendant Benjamin in regard to the retention and payment of the CPA firm of Dupuis & Ryden was in direct violation of Article VII, Section 1E and Article XX, Section 7 of the

By-laws of Local 659 and cannot be considered a fair or reasonable interpretation of the said by-laws.

15. Accordingly, defendant Benjamin is liable to Local 659 under 29 U.S.C. § 501(a), (b).

#### D. *COUNT II: UTILIZATION OF ELECTION ASSISTANTS*

16. Defendant Benjamin had a duty to Local 659 to secure prior approval from the Executive Board of Local 659 before authorizing disbursement of union funds to election assistants in a total amount of $26,-367.70. Court's Findings of Fact # 7, # 8, # 9 and # 30.

17. Defendant Benjamin breached his duty to Local 659 by failing to secure prior approval from the Executive Board of Local 659 before authorizing disbursements of union funds to the election assistants on a "lost-time" basis. Court's Findings of Fact # 31, # 34 and # 35.

18. Defendant Benjamin's breach of duty is further magnified by his continued use of election assistants after receiving notice from International UAW President Woodcock that the practice of utilizing election assistants on a "lost-time" basis was "improper," "an unnecessary expense" and should be "discontinued." Court's Findings of Fact # 32 and # 33.

19. The breach of duty by defendant Benjamin in regard to the utilization of election assistants was in direct violation of Article VII, Section 1E of the By-laws of Local 659 and cannot be considered a fair or reasonable interpretation of said by-law.

20. Accordingly, defendant Benjamin is liable to Local 659 in damages under 29 U.S.C. § 501(a), (b).

#### E. *COUNT III: RETENTION OF COUNSEL*

21. Defendant Benjamin had a duty to Local 659 to secure prior approval from the Executive Board of Local 659 before authorizing disbursement of union funds to the law firm of Draper, Daniel, Ruhala and Seymour and to Attorney Turnage in total amounts of $822.87 and $1,000.00 respectively. Court's Findings of Fact # 7, # 8, # 9, # 41 and # 45.

22. Defendant Benjamin breached his duty to Local 659 by failing to secure prior approval from the Executive Board of Local 659 before authorizing disbursement of union funds to the attorneys in question for professional services. Court's Findings of Fact # 41, # 42, # 45 and # 46.

23. The breach of duty by defendant Benjamin in regard to the retention of counsel was in direct violation of Article VII, Section 1E of the By-laws of Local 659 and cannot be considered a fair or reasonable interpretation of said by-law.

24. Accordingly, defendant Benjamin is liable to Local 659 in damages under 29 U.S.C. § 501(a), (b).

### RELIEF

The beneficiaries of a successful action under Section 501 are the union and its entire membership. The instant action is particularly perplexing to the Court on the issue of damages as defendant Benjamin received no direct pecuniary gain from any of the aforementioned violations of § 501(a) and was admittedly acting in accordance with the past practices of Local 659.

In regard to the retention of the CPA firm of Dupuis & Ryden, the Court finds that the sum of $37,653.00 paid to the CPA firm was fair and reasonable for the services rendered. The final sum exceeds the original statement of $33,000.00 by $4,653.00; but, the Court is of the opinion that such excess was unavoidable and predictable in a venture as large as the 1975 union elections.

The Court further finds that, but for the unauthorized acts of defendant Benjamin in failing to approve a written contract with the CPA firm and in failing to secure prior authorization to disburse the union funds to compensate the CPA firm, Local 659 would have incurred that expense in any event. For the Court to order defendant Benjamin to make restitution to Local 659 in this regard would not only unjustly enrich the

union but would also be a punitive measure against defendant.

In light of these factors, the Court declines to assess compensatory damages against defendant Benjamin for his breach of fiduciary duties in Count I.

In regard to the utilization of election assistants, the Court considers this breach of duty by defendant Benjamin to be the most flagrant. Although the past practice of Local 659 to use election assistants on a "lost-time" basis may excuse or explain the initial employment of election assistants for the 1975 Primary Election, the utilization of the election assistants in the 1975 Run-Off Election was inexcusable. Defendant Benjamin acted in direct contradiction to a directive from UAW International President Woodcock and, more importantly, with knowledge that the use of election assistants violated his position of trust with Local 659.

The Court is aware that, under § 501(a), "the special problems and functions of a labor organization" must be taken into account in defining the scope of a union official's fiduciary duty. However, where a union officer so flagrantly breaches that duty, the Court believes that an assessment of damages is necessary to curb "the misuse of union funds" by union officials. See, *Hood, supra*; Court's Conclusions of Law # 3.

Accordingly, the Court shall award Local 659 damages on Count II in the amount of $10,368.00. Such amount represents the sum paid to the election assistants in the 1975 Run-Off Election improperly authorized and disbursed by defendant Benjamin in violation of his fiduciary duties. See, Court's Findings of Fact # 34.

In regard to the retention of counsel, the Court finds that the sums of $822.87 and $1,000.00 to the law firm of Draper, Daniel, Ruhala and Seymour and to Attorney Turnage respectively were fair and reasonable for the professional services rendered.

The Court further finds that although defendant Benjamin breached his fiduciary duty to Local 659 by failing to secure prior approval before authorizing disbursement of funds, his actions were taken in the best interest of Local 659 and were in response to a "special problem" of Local 659 and its 1975 elections. Further, Local 659 has benefitted from defendant's actions and to require defendant Benjamin to reimburse Local 659 would be unjust enrichment and punitive.

Accordingly, the Court declines to assess compensatory damages against defendant Benjamin for his breach of fiduciary duty in Count III.

The Court shall enjoin defendant Benjamin from expending union funds in violation of the By-laws of UAW Local 659 and of the International UAW Constitution.

Under Section 501(b), the trial court may allot a reasonable part of the recovery in any action under § 501 to pay the fees of counsel prosecuting the action at the instance of the member of the labor organization and to compensate such member for any expenses necessarily paid or incurred by him in connection with the litigation. 29 U.S.C. § 501(b). The Court finds that Local 659 shall be liable to counsel for plaintiffs for a reasonable attorney fee from the recovery from defendant Benjamin and shall be liable to the named plaintiffs for their necessary expenses incurred in this litigation. *Kerr v. Shanks*, 466 F.2d 1271 (CA 9, 1973).

The Court shall defer its ruling on the amount of the allotment to be made by Local 659 to counsel and to the named plaintiffs until such time as counsel and plaintiffs substantiate their fee and expenses respectively.

For the reasons stated, the Court shall enter an appropriate judgment for plaintiffs and against defendant forthwith.

IT IS SO ORDERED.