UNITED STATES of America,
Plaintiff-Appellee,

v.

Charles Robert TALBOTT, and Clayborn C. Taylor, Defendants-Appellants.

No. 78–5224.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 20, 1978.

Decided Dec. 15, 1978.

Jack R. Graf, Jr., Joel R. Campbell, Tom H. Nagel, Columbus, Ohio, for defendants-appellants.

James C. Cissell, U. S. Atty., Daniel A. Brown, Asst. U. S. Atty., Columbus, Ohio, for plaintiff-appellee.

Before PHILLIPS and MERRITT, Circuit Judges and LAWRENCE, District Judge.*

LAWRENCE, Senior District Judge.

Charles R. Talbott and Clayborn C. Taylor appeal their convictions in the Southern District of Ohio for conspiracy to violate the mail fraud statute and for substantive offenses thereunder.

The fourteen-count indictment charges that defendants through the use of the mails billed and received payments from the Ohio Public Welfare Medical Assistance Program (a joint State-Federal Medicaid arrangement) for dental examinations, services and treatments medically unnecessary or, if not, performed unprofessionally and without regard for the patient's well-being.

Count One of the indictment charges the defendants with conspiring to commit an offense against the United States in violation of 18 U.S.C. § 371. The remaining counts charge specific violations of the mail fraud statute in the treatment of individual patients.

Following a trial without a jury which extended over a period of more than a week, District Judge Duncan found Dr. Talbott guilty on twelve counts and Dr. Taylor on seven counts. Each received a six-month sentence on the conspiracy count with two and one-half years probation. In addition thereto, Talbott was fined $11,000 on the other counts on which he was convicted and Taylor, $6,000.

I

The principal ground urged by Appellants on appeal is that the various acts charged against them do not fall within the scope or the intent of 18 U.S.C. § 1341. Underlying such dominant issue and part of it are the contentions that (1) the use of the mail was not an integral part of the alleged scheme or artifice to defraud the Ohio Department of Public Welfare and the United States; (2) that the mailing of bills and the receipt of warrants issued in payment thereof occurred after the consummation of any scheme; (3) that routine mailings for a legitimate purpose cannot be the basis of a conviction for mail fraud, and (4) that the prosecution grew out of screening a large number of transactions and the selection of what the Government considered to be the most flagrant situations while completely ignoring the myriad of routine legitimate treatments.[1] Appellants maintain that they were denied due process of law by such selectivity.

II

■ In a lengthy opinion the District Judge painstakingly reviewed the evidence.

---

* Hon. Alexander A. Lawrence, Senior Judge, United States District Court for the Southern District of Georgia, sitting by designation.

1. A computer analysis by the State Department of Public Welfare was undertaken in respect to youthful welfare recipients who had a signifi-

cant number of root canal procedures or fillings. The analysis disclosed a considerable amount of such treatments by the defendants. On that basis the investigation which led to their indictment was undertaken.

See *United States v. Talbott and Taylor*, 460 F.Supp. 253 (March 3, 1978). Judge Duncan found that the Government had met its burden of proof that the defendants wilfully devised a scheme or artifice to defraud the Public Medical and Assistance Program and the United States by obtaining money through false pretenses. The grossly inadequate treatment of patients was not attributable, the trial judge ruled, to inadvertence or even negligence. It was reasonably inferable, he said, from the evidence that the dentists knew they were not performing root canal therapy for which they mailed billings and that many restorations or fillings of anterior teeth were unnecessary.

Three dental experts testified for the prosecution. They had reviewed the histories, x-rays and in some instances had interviewed patients. These witnesses (whose testimony the trial judge found "highly credible") were in general agreement that root canal procedures were performed on teeth that should have been extracted as well as on healthy teeth; that some procedures billed as root canals were at best pulpotomies, and that in certain instances teeth were filled for no apparent reason while obvious cavities went untreated.

The evidence shows that the defendants attended Ohio State University College of Dentistry from which they graduated in 1975 and were licensed to practice in that State. During the following year they leased office space in Columbus where they operated what was called the Southside Dental Clinic. The defendants concentrated on the treatment of welfare patients. Approximately 95 per cent of the patients treated by them received public assistance.

Invoices were prepared daily by an employee of the Clinic from information furnished by the defendants who reviewed the billings as related to his own work and signed the invoice. They were then mailed to the Ohio Department of Public Welfare. After processing, warrants in payment of the allowable reimbursement for dental services were mailed to Dr. Talbott and to Dr. Taylor at their respective home addresses.

The fraud claimed by the Government involved false representations in regard to the type of dental treatment involved. The rate for reimbursement in the case of root canal therapy depended on the number of canals treated. For one such procedure, $55.00 was allowed; for two, $65.00, and for three, $80. Root canal dentistry is a complicated procedure and generally requires two or three appointments. On the other hand, a pulpotomy is a distinct endodontic treatment which, compared to root canal therapy, is a relatively swift and easy procedure. The allowable rate in the case of pulpotomies was $10.00 per tooth.

Evidence was presented by the Government that the defendants billed on the basis of root canal rates when a pulpotomy was, in fact, the dental procedure used by defendants. It appears that on a single day Taylor billed for forty root canal therapies and Talbott sixty-seven. Invoices were submitted by Dr. Taylor in September, 1976 for 424 root canal procedures. Dr. Talbott billed for 382 such treatments for the first thirteen days in November of that year.

The other type of misrepresentation in billings relates to restorations of anterior teeth, commonly known as fillings. The acceptable rate for filling a cavity varied from $5.00 to $10.00 depending on factors not relevant here. The defendants billed for numerous "fillings" that could be quickly placed on accessible tooth surfaces with little difficulty. The pattern of defendants' practice changed significantly after November 15, 1976, when a rule was adopted requiring prior authority for reimbursable root canal therapy. After that date, fillings became the Clinic's principal source of income.

The above represents a brief summary on the essential facts. They are carefully analyzed in the Opinion of the District Court as to each individual treatment of the patients mentioned in the indictment. Judge Duncan's findings are amply supported by the evidence.

III

█ Did the acts of the defendants fall within the scope and the legislative intent

of the mail fraud statute? Title 18 U.S.C. § 1341 provides:

"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, . . . for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, . . any such matter or thing, [shall be punished according to law] . . . ."

The elements of the offense of mail fraud under 18 U.S.C. (Supp. V) § 1341 are (1) a scheme to defraud, and (2) a mailing for the purpose of executing same. "It is not necessary that the scheme contemplate the use of the mails as an essential element." *Pereira v. United States*, 347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed. 435 (1954). See also *United States v. Schilling*, 561 F.2d 659 (6th Cir. 1977). Nor is it required that the false representations themselves were transmitted by mail. "It is sufficient that the use of the mails was caused by the defendant in furtherance of the fraudulent scheme." *United States v. Hopkins*, 357 F.2d 14, 17 (6th Cir.) *cert. den.* 385 U.S. 858, 87 S.Ct. 107, 17 L.Ed.2d 84 (1966).

"Where one does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, then he 'causes' the mails to be used." *Pereira v. United States, supra*, 347 U.S. at 8–9, 74 S.Ct. at 363. See also *United States v. Street*, 529 F.2d 226 (6th Cir. 1976). "That the confirmation letters and mailed check could have been hand-delivered or delivered otherwise than through the mails, is immaterial." *United States v. Stull*, 521 F.2d 687, 689 (6th Cir. 1975) *cert. den.* 423 U.S. 1059, 96 S.Ct. 794, 46 L.Ed.2d 649 (1976).

A use of the mails which "is not a step toward receipt of the fruits of the scheme is not covered by section 1341." *United States v. Staszcuk*, 502 F.2d 875, 880 (7th Cir. 1974) modified 517 F.2d 53, *cert. den.* 423 U.S. 837, 96 S.Ct. 65, 46 L.Ed.2d 56 (1975). However, a conviction is warranted if use of the mails was foreseeable. *United States v. Hasenstab*, 575 F.2d 1035 (2nd Cir. 1978). In *United States v. Toliver*, 541 F.2d 958 (2nd Cir. 1976), in affirming convictions under the mail fraud statute involving welfare fraud under a state unemployment compensation act, the Second Circuit said that "the use of the mails was here essential to the success of defendants' plan since their obtaining the fruits of their fraudulent scheme depended on the postal service's delivery of the unemployment checks to their mailboxes." 541 F.2d at 966–67.

### IV

Defendants contend that what is fundamentally involved in this case is at best malpractice and that such cannot be the basis of federal prosecution where there is pre-mailing consummation of tortious misconduct in the treatment, technique or diagnosis. To be sure, there was malpractice. In itself such is not subject to federal prosecution for mail fraud. However, the defendants were tried for the offense of wilfully devising a scheme or artifice to defraud the State Welfare Department and the United States through knowing misrepresentation of the type and nature of the treatments involved and the carrying out of such scheme by use of the mails in delivering the false billings.

The fraud was a continuing one. It did not end with the acts of malpractice *vis-a-vis* the patients of defendants. The fraudulent scheme continued until invoices were mailed and reimbursement received for the particular dental services through the mail.

The Appellants' contention as to malpractice and the fact of consummation of the wrongdoing before the mailing of false invoices or receiving payment based thereon is devoid of merit. So is the claim that they were denied due process by the Government's prejudicial selection of a few grosser instances of misrepresentation and

the use of same as the basis of the prosecution of them for conspiracy and mail fraud.

## V

A number of miscellaneous grounds are raised on appeal. Appellants contend that the findings of the district court were so qualified that the trial judge did not find them guilty beyond a reasonable doubt; that the verdict of guilty on the conspiracy count is inconsistent with the specific finding that defendants were unaware of the fraudulent nature of specific invoices submitted by the other;[2] that the district court abused its discretion by not holding a pre-trial conference; in not ordering a bill of particulars, and by failing to rule on the pre-trial motions until the morning of trial. Finally, Appellants contend that the trial court erred in admitting evidence as to their total welfare billings.

We have considered each of these grounds and find them to be without merit and that none constitutes reversible error.

The judgment of the District Court is affirmed.

---

2. Defendants were charged in thirteen counts with aiding and abetting in the violations of the mail fraud statute.