UNITED STATES of America,
Plaintiff-Appellee,

v.

Willie G. BROWN, Jr., a/k/a Lawrence
Johnson, Defendant-Appellant.

No. 82–1452.

United States Court of Appeals,
Sixth Circuit.

Argued April 18, 1983.

Decided June 8, 1983.

Byron F. Latter, court-appointed (argued), Flint, Mich., for defendant-appellant.

Leonard F. Gilman, U.S. Atty., Maura Corrigan, Asst. U.S. Atty. (argued), Detroit, Mich., Robert W. Haviland, Asst. U.S. Atty., Flint, Mich., for plaintiff-appellee.

Before EDWARDS, Chief Judge, LIVELY, Circuit Judge and MARKEY, Chief Judge.*

GEORGE CLIFTON EDWARDS, Jr., Chief Judge.

This case involves an admittedly fraudulent scheme operated by defendant Brown with at least temporary success. Defendant, however, was convicted in a federal court on a charge of aiding and abetting and conspiracy to commit mail fraud in violation of 18 U.S.C. §§ 2, 1341 and 371. He was sentenced to two concurrent four-year terms. Neither at trial nor on appeal did defendant dispute his involvement in the scheme or that the scheme was fraudulent. His contention is simply that under the Supreme Court's interpretation of the mail fraud statute in *United States v. Maze,* 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974), appellant had committed no *federal* offense.

The facts in the case, essentially undisputed, are as follows: Telemail Sales was a supposed mail-order business designed to defraud banks. Telemail opened a Merchants' Checking Account with the Citizen's Bank of Flint, Michigan in which credit card sale tickets were to be deposited with immediate credit to the account for the amount of the tickets.

On December 6, 1978, fraudulent sales tickets in the amount of $9,646 were deposited in the Bank using numbers from real

* Honorable Howard T. Markey, Chief Circuit Judge, U.S. Court of Appeals for the Federal    Circuit, sitting by designation.

charge accounts but unauthorized by the owners of the cards. In the next few days, the Bank, in the ordinary course of business, mailed the credit items to Omaha, Nebraska—the location of a clearinghouse which sorts the credit items and transmits them to the card issuing bank. (It takes about four days for the credit items to clear this network.) Credit items wouldn't clear if nonexistent charge numbers were used. Final settlement occurs when the charges reach the issuing bank in approximately six to ten more days. On December 16, 1978 a person presented a check in the amount of $8,500 drawn on the Telemail Sales Account at Citizen's Bank, and using a stolen ID, obtained a cashier's check for it which was subsequently cashed. In early spring 1979, the first of the deposited credit slips began to bounce back disclaimed by credit card holders.

Appellant's contention concerning this appeal is as follows: In *Maze* the court held that defendant's scheme to defraud a bank by using a stolen credit card ended when he used the card to pay motel bills. The mailings of invoices and payments between the motels and the bank which issued the credit card were not in furtherance of the scheme because, as the court observed, the purpose of mailing the invoices was to adjust accounts between the various victims of Maze's fraud, and there was "no indication that the success of his scheme depended in any way on which of his victims ultimately bore the loss," 414 U.S. at 402, 94 S.Ct. at 649. Here the account for Telemail Sales was credited immediately after the sales tickets were deposited. The essence of appellant's argument is that a check on the account could be immediately cashed so the mailing in this case was neither in furtherance of appellant's fraudulent scheme nor for the purpose of executing it.

The United States seeks to distinguish *Maze* and relies upon early cases, particularly *Pereira v. United States,* 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954). Our analysis of the instant case will start, of course, with the facts recited above and continue with the statute set out below:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, . . . for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, . . . any such matter or thing, [shall be punished according to law.]

18 U.S.C. § 1341.

It is, we believe, significant that plaintiff and his company, Telemail, did not realize the ill-gotten gains until 10 days after the fraudulent sales tickets had been deposited in the bank and credited to Telemail. The delay during which mailing to the clearinghouse of the fraudulent sales tickets took place occurred before the check for $8,500 was cashed. The aspect of legitimacy of the transaction which arises from the 10-day delay would tend to lull inquiry and delay detection. Thus, we hold that defendant knowingly caused the fraudulent sales slips to be delivered to the clearinghouse by mail; that he performed this action "with knowledge that the use of the mails [would] follow in the ordinary course of business," *Pereira v. United States,* 347 U.S. 1, 8–9, 74 S.Ct. 358, 362–363, 98 L.Ed. 435 (1954); and that detection at the point of withdrawing cash from the fraudulent account was thereby made more difficult. As we see this case, the mailings involved were closely related to that the mails were used in furtherance of the scheme.

Considerable authority in this Circuit appears to us to support the analysis set forth above. See *United States v. Talbott,* 590 F.2d 192, 196 (6th Cir.1978); *United States v. Robinson,* 651 F.2d 1188, 1196 (6th Cir.), *cert. denied* 454 U.S. 875, 102 S.Ct. 351, 70 L.Ed.2d 182 (1981).

We also feel that the views set forth above are consistent with and supported by

both *Pereira v. United States, supra,* and *United States v. Sampson,* 371 U.S. 75, 83 S.Ct. 173, 9 L.Ed.2d 136 (1962).

This case is, as we see it, distinguished from *United States v. Maze, supra,* primarily because the fraudulent scheme had not reached fruition prior to the use of the mails and because the use of the mails, appellant's contentions to the contrary notwithstanding, in our view contributed to the temporary success of the fraud.

The judgment of conviction is affirmed.