UNITED STATES of America, Plaintiff,

v.

Lethia WATKINS and Richardson Lacy, Defendants.

Crim. No. 86 80504.

United States District Court,
E.D. Michigan, S.D.

Oct. 16, 1986.

Phyllis M. Golden, U.S. Attorney's Office, Detroit, Mich., for plaintiff.

Patricia Streeter, Detroit, Mich., Richard Lustig, Southfield, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

ANNA DIGGS TAYLOR, District Judge.

Defendants Lethia Watkins and Richardson Lacy were each indicted on one charge of mail fraud in violation of 18 U.S.C. § 1341 (1982). The gravamen of the offense of which defendants are accused is the defrauding of State Farm Insurance Company by arranging with a middleman to dispose of an insured automobile, thereafter reporting the car as stolen and submitting a claim for reimbursement of the value of the car to the insurance company, thereby causing the use of the mails. With the approval of the court and the consent of the government, defendants waived a jury trial. The matter was heard by the court on September 30, 1986. The court's findings of fact and conclusions of law are set forth below.

Defendants Lacy and Watkins are husband and wife. In April of 1984, defendant Lacy purchased in his name only, a gray 1982 Cadillac Cimarron. Defendant Watkins thereafter obtained insurance on the car in her name only, from State Farm Insurance Co. (State Farm). The evidence presented at trial indicated that in the Spring of 1985, defendant Watkins contacted James Ferguson, a former neighbor whom she had known for approximately ten years, and asked him if he knew anyone who did "insurance jobs," explaining that she meant a pretended theft of a car in order to file an insurance claim for its loss. Ferguson said that he didn't, but he agreed to make inquiries and subsequently contacted Jerome Starks, who told Ferguson that he knew of someone who could handle the job and that he would arrange a meeting.

Ferguson relayed this information to defendant Watkins and they agreed that Watkins' car should be parked in front of Ferguson's home on the evening of May 7, 1985. Ferguson testified that defendant Watkins told him that her brother would deliver the car and that he intended to remove the radio and battery from it.

Ferguson found the car unlocked, with the keys inside when he examined it on the morning of May 8th. He contacted Starks, who arrived at Ferguson's home at approximately 12:30 p.m. with the "broker," Carl Taylor, to whom Ferguson intended to sell the car. Unbeknownst to Starks and Ferguson, Taylor was undercover F.B.I. Special Agent Cary Thornton, who was assigned to "Project Steamclean," an FBI investigation aimed at identifying persons filing fraudulent insurance claims for allegedly stolen cars.

After examining the car, Agent Thornton rejected Ferguson's proposed price of $300 to $400 because the missing battery necessitated towing. Ferguson accepted $250 for the car. Agent Thornton arranged for the towing to occur later that afternoon, paid Starks $50 for introducing him to Ferguson, and instructed Ferguson to tell the owner of the car to report it stolen in a few days. Ferguson called defendant Watkins and relayed the information.

Defendant Lacy reported the theft to the Detroit Police on Saturday, May 11th. Lacy stated that the car was parked and locked in his driveway at 12:30 a.m. on Friday morning, May 10th, and that it had disappeared sometime between then and 1:00 p.m. that afternoon.

On May 14th, defendant Watkins reported the theft by phone to the State Farm claims office and the claim was assigned to adjuster Jesse Mitchell. Pursuant to standard office notation procedure, Mitchell directed his secretary to mail an explanatory letter and an affidavit of theft to the insured, to request the theft report from the City of Detroit and to mail a routine inquiry regarding the theft to the National Automobile Theft Bureau (NATB). Further processing of the claim would only occur upon return receipt of the completed affidavit of theft by the insured.

Mitchell testified that, instead of returning the affidavit by mail, defendant Watkins came to his office on June 10th requesting settlement of her claim. When Mitchell explained to her that she must first complete the affidavit, defendant Watkins stated that she had never received it and offered a recent change of residence as a possible explanation. Mitchell gave her another affidavit which she partially executed in the office.

Defendant Watkins later returned alone to the State Farm office with the completed affidavit and the title to the vehicle which was necessary for settling the claim. Because the insurance company required the title holder, Lacy in this case, to sign a release in the adjuster's presence, both defendants returned for this purpose the following day. Defendant Lacy also completed and signed an Odometer Statement certifying the odometer reading as of the time of the theft as 34,000 miles and both defendants signed a release and discharge agreement in satisfaction of the settlement. Two checks were issued: one in the amount of $6,003.90, payable to General Motors Acceptance Corporation, and the other, in the amount of $1,168.10, payable to Richardson Lacy and Lethia Watkins. In addi-

tion, defendant Watkins was paid $300, the maximum allowed under her policy, to reimburse her for car rental expenses.

■ A conviction of mail fraud requires proof of (1) a scheme to defraud (2) which involves a use of the mails (3) for the purpose of executing the scheme. *U.S. v. Castille,* 795 F.2d 1273, 1278 (6th Cir.1986). With respect to defendant Watkins, there is no question that she participated in a scheme to defraud the insurance company, and in fact, she so stipulated at trial. She does contest, however, the government's proof of the second and third elements of the crime.

■ The mailing alleged in Count I of the indictment is State Farm's mailing of the affidavit of theft to defendant Watkins on May 17th.

It is not required that the party charged actually transmit the false representations by mail, *United States v. Talbott,* 590 F.2d 192, 195 (6th Cir.1978); rather, '[i]t is sufficient that the use of the mails was caused by the defendant in furtherance of [the] fraudulent scheme.' (citations omitted).

*U.S. v. Strong,* 702 F.2d 97, 100 (6th Cir. 1983). A person causes the use of the mails if he or she does an act with knowledge that the use of the mails which occurs will follow in the ordinary course of business, or where such use can be reasonably foreseen. *Pereira v. U.S.,* 347 U.S. 1, 8–9, 74 S.Ct. 358, 362–63 98 L.Ed. 435 (1954); *U.S. v. Brown,* 709 F.2d 14, 15 (6th Cir.), cert. denied, 464 U.S. 1019, 104 S.Ct. 554, 78 L.Ed.2d 726 (1983); *U.S. v. Calandrella,* 605 F.2d 236, 253 (6th Cir.), cert. denied, 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979); *U.S. v. Street,* 529 F.2d 226, 228 (6th Cir.1976), *U.S. v. Castille,* 795 F.2d at 1278.

Clearly, defendant Watkins knew on May 14th that the U.S. mails would be used to process her claim. On that date defendant reported the theft by phone to State Farm and was told that an affidavit of theft would be mailed to her. However, defendant does not so much dispute that it was

reasonably foreseeable that the mails would be used, as she disputes that the mails were in fact used. She argues that her allegation of non-receipt when she arrived at the office on June 10th essentially nullifies any inference that the affidavit was actually sent and that the probability that the affidavit was sent is merely equal to the likelihood that it was not.

The difficulty inherent in requiring business entities to produce direct proof of mailing is self-evident. In the business context, where volume mailing is the norm, no employee can be expected to remember his or her placement of a specific item in the mail which may have occurred many months, or even years, prior to trial. Nor is the stamped envelope available as proof that the mails were used by the business because production of such evidence is wholly within the control of the recipient. Therefore, the courts have acknowledged that circumstantial evidence of mailing as a routine practice of a particular business is sufficient to prove that the item was actually mailed. *U.S. v. Scott,* 730 F.2d 143, 146–47 (4th Cir.1984); *U.S. v. Scott,* 668 F.2d 384, 388 (8th Cir.1981); *U.S. v. Goss,* 650 F.2d 1336, 1343–44 (5th Cir.1981); *U.S. v. Ledesma,* 632 F.2d 670, 675–76 (7th Cir.) *cert. denied,* 449 U.S. 998, 101 S.Ct. 539, 66 L.Ed.2d 296 (1980); *U.S. v. Joyce,* 499 F.2d 9, 15 (7th Cir.1974).

■ Although a finding of guilt cannot be sustained "where the evidence 'at most establishes no more than a choice of reasonable probabilities' or inferences, one criminal and the other innocent," *U.S. v. Leon,* 534 F.2d 667, 677 (6th Cir.1976) (quoting *U.S. v. Saunders,* 325 F.2d 840, 843 (6th Cir.1964), *cert. denied,* 379 U.S. 978, 85 S.Ct. 677, 13 L.Ed.2d 568 (1965)), the evidence presented in the case at bar establishes far more than equal inferences bearing upon the probability that the affidavit was mailed. The government proved beyond a reasonable doubt not only that it was State Farm's regular business practice to mail affidavits of theft to insured claimants, but that in this case, the affidavit was undoubtedly sent to defendant Watkins.

In establishing use of the mails, the government presented the file cover activity log for defendant Watkins' claim which revealed that Mitchell instructed his secretary to send the affidavit of theft to the defendant. On that same day he also instructed her to request the theft report from the City of Detroit and to send the required inquiry to the NATB. The log sheet entry, dated May 17th, and initialed by Mitchell's secretary, verifies that she mailed those items. In addition, the government produced the file copy of the explanatory letter which was mailed to defendant Watkins along with the affidavit. This letter, which was signed by Mitchell, was dated May 17th and included Watkins' name and original address as well as other information pertinent to her claim. Also produced at trial was a copy of the letter, dated May 15th, which the secretary had mailed to the NATB and, most significantly, Mitchell's file contained the NATB's response acknowledging its receipt of the letter. This evidence convinces the court beyond a reasonable doubt that the affidavit of theft was indeed mailed to defendant Watkins.

■ In his closing statement defendant Watkins' counsel argued that the government had failed to prove the third element of mail fraud: the requirement that the purpose of the use of the mails be in execution of the scheme. Defense counsel argued that the explanatory letter sent to defendant Watkins was too remote in relation to the scheme to be considered in its furtherance. While this may well be true, the mailing of the letter is *not* the use of the mails which is charged in the indictment. Rather, the indictment plainly identifies the mailing of the *affidavit of theft* as the basis of the government's charge. The receipt of the affidavit of theft by the insurance company was crucial to the scheme because in its absence, the claim could not be processed. *See, Castille,* 795 F.2d at 1278. Thus, it cannot be argued that the mailing of the affidavit was too remote to be in furtherance of the scheme. Therefore, the government has proven all

of the elements of mail fraud beyond a reasonable doubt and the court finds defendant Watkins guilty of the charge.

Aside from the issue of the mailing, with which defendant Lacy also takes issue but of which the court has already disposed, Lacy argues that the government has failed to prove his involvement in the scheme. The court finds no merit in this argument. Defendant Lacy's actions in his delayed reporting of the purported theft, as having occurred at a false date, time and place, and in completing and signing the false Odometer Statement inextricably linked him to the scheme.

Officer Bobby McBride testified at trial that Lacy was the person who reported the theft on May 11th. Although the officer could not identify defendant Lacy specifically, having seen him on only one occasion almost a year and a half prior to trial, the theft report indicated that a 31 year old black male, using Lacy's name, presenting his picture identification and purporting to be the owner of the stolen vehicle reported the theft. Officer McBride further testified that the preferred police department practice is to take a theft report only from the owner of the stolen vehicle. He stated that there was only one chair at which the person reporting the theft could sit and that if someone else accompanied the owner, that individual would have been asked to wait in another area. Moreover, the officer testified that if the person making the report were someone other than the owner, he would have so indicated on the theft report. The theft report, which was admitted in evidence at trial, bore no such notation.

In addition, defendant Lacy signed the fraudulent Odometer Statement reporting the car's mileage as 34,000 miles on the date of the theft. In actuality the car's odometer read 57,738 miles on May 8, 1985. The odometer statement was signed in Mr. Mitchell's presence and was used by the insurance company in part to determine the value of the car. A repair invoice from Dick Harris Cadillac, Inc. dated June 14, 1984, almost a year before the purported theft, which was found in the car by Agent Thornton, listed the car's mileage at that time as 37,765 miles. Whether the defendant or the Dick Harris Cadillac, Inc. service representative wrote in the mileage figure on the invoice, it is evident that Lacy knew in May of 1985 that 34,000 miles was far below the car's actual mileage. His false representation of an inaccurate mileage figure which increased the amount of his reimbursement was clearly a part of and in furtherance of the scheme to defraud the insurance company.

Since it is not incumbent .upon the government to prove that Lacy actually transmitted false representations by mail, but only to prove that he acted with the knowledge that the use of the mails was reasonably foreseeable, the government's proof that Lacy participated in the scheme, coupled with the fact that the affidavit of theft was mailed to defendant Watkins is sufficient to sustain this court's finding of guilt with respect to him as well as to Watkins. Therefore, the court finds both defendants guilty of mail fraud as charged.

IT IS SO ORDERED.