**UNITED STATES of America, Plaintiff,**

v.

**Carolyn J. KING, Defendant.**

**Civ. A. No. 78–627.**

United States District Court, D. South Carolina, Orangeburg Division.

April 3, 1979.

168

Wistar Stuckey, Columbia, S. C., J. Roger Edgar, Robert L. Ashbaugh, G. Ridgley Loux, U. S. Dept. of Justice, Civ. Div., Washington, D. C., Anthony Cloud DiGioia, Trial Atty., Civ. Div., Dept. of Justice, Washington, D. C., for plaintiff.

Jerry M. Screen, Columbia, S. C., for defendant.

## ORDER

SIMONS, District Judge.

This action was tried before the court at Aiken, South Carolina, on March 21 and 22, 1979, without a jury.

### FINDINGS OF FACT

1. This is an action brought by the United States to recover amounts paid to the defendant, Carolyn J. King, in violation of

her fiduciary duties as agent of the plaintiff.

2. During the time relevant to this suit, the defendant was a member of the Foreign Service and was a Consular Officer of the United States Department of State, an agency and instrumentality of plaintiff.

3. From approximately August 20, 1973, to October 1, 1974, the defendant served as a vice-consular officer at the United States Consulate in Port-au-Prince, Haiti. At that post, one of her principal job assignments was to review the applications of individuals seeking non-immigrant visas for entry into the United States. Although she was at all times subject to the statutes, regulations, policy directives, training and instructions of the State Department, nevertheless, great trust was reposed in the defendant by the United States. The defendant had very broad discretion in determining whether to grant or reject applications for non-immigrant visas.

4. Sometime after the defendant's arrival in Haiti, she met Max Auguste, a Haitian national. The defendant and Auguste subsequently entered into a scheme to sell non-immigrant visas to Haitian nationals by accepting payments in return for defendant's use of her official position to approve such applications. This scheme operated from shortly after the first of January 1974, until the end of May, 1974.

5. Pursuant to the scheme, Max Auguste contacted another Haitian national, Nady Francois, now deceased. Francois agreed to participate, and he enlisted two other Haitians, Lenoir Philistin and Carlos Lahens, as recruiters of prospective Haitians willing to pay bribes to obtain visas to the United States. Auguste, Francois, Philistin, Lahens and King each received a portion of the bribes paid by the visa applicants. The defendant received $500 for every visa application granted pursuant to the arrangement.

6. In order to distinguish visa applications subject to the bribery scheme from the many other applications processed by the Consulate, the defendant and the other participants employed the following code words: "none", "Soonest", and "Trèstôt." One of the three code words was written on the application forms by Max Auguste shortly before presentation to the non-immigrant visa section of the Consulate, where the defendant was employed.

7. On learning of the scheme, State Department investigators reviewed the non-immigrant visa records at the Consulate in Haiti. They searched the files of all non-immigrant visas granted during the defendant's assignment to the Consulate. One hundred and sixty visas said to have a code word were found as a result of this search. All had been approved during the period in which the scheme operated. In the files of applications which were rejected during the operation of the scheme, only one visa containing a code word was found by the State Department investigators. This is consistent with the testimony of Auguste.

The applications that had been granted and which contained the code words numbered in excess of 140. They were reviewed by Teresa Ann Kleinkauf, who had been a coworker of the defendant at the Consulate, and by Samuel Karp, who has served as Consul in charge of the Visa Branch at various American Embassies. As to those applications, testimony established that, under the standards applicable to non-immigrant visas, there was substantial reason to doubt the eligibility for entry into the United States of most of the applicants whose visas had been granted pursuant to the scheme. This evidence is further illuminated by the testimony of Auguste who testified to having paid Defendant King in excess of $70,000, which, at $500 per visa, would indicate that at least 140 visa applications were processed and approved by the defendant pursuant to the bribery scheme.

8. The defendant has previously been tried and convicted in this court of criminal charges that establish the existence of the same scheme described above. Specifically, these criminal charges were as follows: (1) A conspiracy count in violation of 18 U.S.C. § 371; (2) a substantive count in violation of 22 U.S.C. § 1199; and (3) twenty-one substantive counts in violation of 18 U.S.C.

§ 201(c)(1). This prior conviction under 18 U.S.C. § 201(c)(1) also establishes defendant's receipt of $10,500 for approving 21 of the non-immigrant visas at issue here.

9. The preponderance of the evidence establishes that the defendant breached her fiduciary duty to the plaintiff by exploiting her position of public trust for secret and personal profit. The plaintiff introduced 160 non-immigrant visa applications from the period in question. Six of these were withdrawn at trial because they bore no examiner's initials. Four more were not identified by Max Auguste as having been coded by him. Of the remaining 150, the court's own examination reveals that three do not bear the defendant's initials. See plaintiff's exhibits 30, 116, and 127. Three more do not clearly bear one of the three code words. See plaintiff's exhibits 110, 111, and 112. This leaves 144 non-immigrant visa applications from the relevant time period which bear the defendant's initials and one of the three code words. Consequently, this court finds that the defendant accepted bribes of $500 each in exchange for approving 144 non-immigrant visa applications.

10. The court finds that the defendant received at least $72,000 in violation of her fiduciary duty to plaintiff and that said sum or the proceeds of said payments is properly due and owing to the United States. Therefore, the court finds that the defendant is liable to the United States in the amount of $72,000, and that the United States is entitled to the imposition of a constructive trust upon said payments and all their proceeds wheresoever and howsoever held.

11. The evidence further establishes that the defendant sent frequent sums of money, in cash or by check, to her mother, Willie Mae King, and that these payments increased substantially after the inception of the bribery scheme. The defendant, the defendant's mother, and the defendant's sister, Janie B. White, purchased a four-apartment dwelling at 5 Bristol Drive, Brunswick, Georgia, for approximately $45,000, of which approximately $12,000 was paid in cash or money orders. Neither Mrs. King nor Mrs. White was able to satisfactorily explain the source of the funds they allegedly contributed, and the court concludes that these sums were in fact obtained from the defendant. Moreover, the evidence establishes that while the property at 5 Bristol Drive was listed in the name of Willie May King, the defendant retained control over the property and its rental income. From the foregoing, the court concludes that the property at 5 Bristol Drive and its proceeds were obtained by the defendant as a result of her acceptance of bribes for the sale of non-immigrant visas.

## CONCLUSIONS OF LAW

1. This civil action was instituted by the United States as plaintiff pursuant to 28 U.S.C. § 1345 (1976), and consequently this court has subject matter jurisdiction to determine the controversy.

2. The defendant has been properly served with process and is subject to this court's jurisdiction.

3. The defendant, as a Foreign Service Officer of the Department of State, was an agent of the plaintiff. As such, she occupied a position of public trust and owed a fiduciary duty to the plaintiff United States.

4. The secret acceptance of payments from those over whom a public official exercises his or her official position, influence and authority creates a conflict of interest and a breach of fiduciary duty, and renders said official liable to his Government. See United States v. Carter, 217 U.S. 286, 30 S.Ct. 515, 54 L.Ed. 769 (1910); United States v. Drisko, 303 F.Supp. 858 (E.D.Va.1969). The evidence establishes that the defendant did not fully disclose her adverse interest to her principal, the plaintiff. Consequently, absent full disclosure, there was not, nor could there be, any ratification of defendant's acts by her principal. Therefore, by secretly placing her interests in conflict with those of her principal, the defendant breached her fiduciary duty, making her liable to plaintiff United States.

5. Whether or not a principal proves actual loss from a disloyal agent's breach of a fiduciary duty, the principal is entitled, as a matter of law, to recover the amount of the secret payments, their value or their proceeds, that said agent has received. *See Carter*, 217 U.S. at 305–06, 30 S.Ct. 515. The relief appropriate in such a situation includes the imposition of a constructive trust. *Hunter v. Shell Oil Co.*, 198 F.2d 485, 489 (5th Cir. 1952). Accordingly, plaintiff is entitled to a judgment in its favor and against the defendant in the amount of $72,000, and to have a constructive trust imposed for its benefit upon the bribe monies and their proceeds, wheresoever and howsoever held.

6. Plaintiff is entitled to the imposition of a constructive trust upon all proceeds of the sale of the property located at 5 Bristol Drive, Brunswick, Georgia, including any disbursements previously made to the defendant, the defendant's mother, Willie Mae King, or the defendant's sister, Janie B. White, and including any payments due in the future derived from said sale.

AND IT IS SO ORDERED.